# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:22-cv-00078-MR

RICARDO EDWIN LANIER,      )
                              )
            **Plaintiff,**       )
                              )
**vs.**                          )          <u>ORDER</u>
                              )
                              )
**J. BURNS, et al.,**         )
                              )
            **Defendants.**    )
_____ )

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983, <u>see</u> 28 U.S.C. §§ 1915(e) and 1915A; Plaintiff's letter to the Clerk, [Doc. 7]; and Plaintiff's "Proposed Order of Preliminary Injunction," [Doc. 7-1], which the Court will construe as a motion for preliminary injunction.  Plaintiff is proceeding in forma pauperis. [Docs. 4, 10].

## I.    BACKGROUND

Pro se Plaintiff Ricardo Edwin Lanier ("Plaintiff") is a pretrial detainee currently held at Henderson County Detention Center ("HCDC") in Hendersonville, North Carolina.  He filed this action on April 8, 2022, pursuant to 42 U.S.C. § 1983, naming J. Burns and Z. Capps, identified as Henderson County Sheriff Officers, as Defendants.  [Doc. 1].  Plaintiff does

not allege the capacity(ies) in which he sues these Defendants.  [See id.].
Plaintiff alleges as follows.

In the early morning of July 9, 2021, Plaintiff's wife called the police
due to a verbal argument between Plaintiff and his wife.  Defendants Burns
and Capps, with a third officer, arrived at Plaintiff's home and Plaintiff opened
the front door.  The third officer asked Plaintiff to step outside while Burns
and Capps went inside to speak to Plaintiff's wife.   Plaintiff's wife told
Defendants that Plaintiff had not assaulted her.  At some point, Defendants
Burns and Capps came outside and told the third officer that no crime was
"reported" and that there were no signs of domestic violence.  Defendants
and the third officer then left.  Plaintiff and his wife went inside, closed the
front door, and went to their bedroom.  When in the bedroom, Plaintiff asked
his wife why she called the police.  She became infuriated and "while
standing by the curtains accidentally made the curtain come down in the
bedroom."  [Doc. 1 at 7-8].  Plaintiff was standing on the other side of the
room.  Defendants Burns and Capps apparently reentered Plaintiff's home,
without Plaintiff's permission, and Defendant Burns ordered Plaintiff to put
his hands behind his back and submit to handcuffs. Defendant Burns applied
the first handcuff "extremely tight," which caused immediate numbness to
Plaintiff's hand.  Defendant Burns then applied the other handcuff, which had

a rough edge that scraped Plaintiff's wrist. [Id. at 9]. Then, without "proper 'assiduousness' or provocation," Defendant Burns or Defendant Capps tased the Plaintiff. [Id. at 9-10]. Plaintiff's wife told Defendants that Plaintiff did not assault her, but Defendant Burns charged Plaintiff with Assault on a Female to justify the use of excessive force and to cover up the unauthorized entry into Plaintiff's home.[1,2] [Id. at 11].

For damages, Plaintiff claims he suffered physical injury from the use of excessive force and mental and emotionally suffering. Plaintiff also claims that his dog died unnecessarily while he was incarcerated, and that he suffered stress and hardship because his daughter-in-law was exposed to Covid-19 while he was incarcerated. [Doc. 1 at 6-7, 12].

For relief, Plaintiff seeks $2,280,000.00 in damages. [Id. at 12].

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the

---

[1] Plaintiff also alleges that the judge set an excessive bond in violation of the Fourth and Fourteenth Amendments. [Doc. 1 at 11]. Plaintiff, however, does not name the judge as a defendant in this matter and any such claim would be barred by judicial immunity in any event.

[2] Plaintiff alleges in his Complaint and claims in his "Proof of Service of Enclosed Documents" that video footage from police body cameras was included with his Complaint as "EXHIBIT B." [See Doc. 1 at 3, 7-12; Doc. 1-5]. The Court, however, did not receive Exhibit B with Plaintiff's Complaint or otherwise.

3

grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff claims that his rights under the Fourth, Eighth, and Fourteenth Amendments were violated by the alleged conduct.

## A. Unlawful Entry into Plaintiff's Home

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. A warrantless entry into an individual's home is presumptively unreasonable. <u>See</u> <u>Payton v. New York</u>, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380 (1980). This presumption, however, can be overcome. <u>See</u> <u>United States v. Yengel</u>, 711 F.3d 392 (4th Cir. 2013). "[I]n order for a warrantless search to pass constitutional muster, 'the person making the entry must have had an objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." <u>Id.</u> at 397 (quoting <u>United States v. Moss</u>, 963 F.2d 673, 678 (4th Cir. 1992)).

Domestic disturbances are rife with potential to present such an emergency. "[D]omestic situations can escalate quickly: '[d]omestic disturbances have a low flash point, and violence may be lurking and explode with little warning."" <u>Trull v. Smolka</u>, 411 Fed. App'x 651, 656 (4th Cir. 2011) (quoting <u>McCracken v. Commonwealth</u>, 39 Va.App. 254, 572 S.E.2d 493, 496 (2002) (internal quotation marks and citation omitted)). In <u>Trull</u>, the

Fourth Circuit held that a wheelchair bound plaintiff failed to allege a constitutional violation where officers had responded to a domestic disturbance call by plaintiff's wife, had seen no signs of physical violence, and entered a locked bathroom where plaintiff was located. The plaintiff was unwilling to leave the bathroom and his wife told officers that there was a firearm somewhere in the house. The Fourth Circuit found that the officers' entry into the bathroom was justified by exigent circumstances. 411 Fed. App'x at 656. See Georgia v. Randolph, 547 U.S. 103, 118, 126 S.Ct. 1515, 1525 (2006) ("No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering … to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur….").

Plaintiff here alleges that his wife called law enforcement for "mediation" of a verbal argument, that Defendants and a third officer arrived at Plaintiff's home and separately spoke with Plaintiff and his wife, and that after Defendants left the home, Plaintiff and his wife went to their bedroom, where Plaintiff's wife became "infuriated" and the bedroom curtains came down. At this point, Defendants re-entered Plaintiff's home without

permission and restrained the Plaintiff.  Taking these allegations as true and giving Plaintiff the benefit of every reasonable inference, Plaintiff has failed to state a claim under the Fourth Amendment based on Defendants' warrantless entry into Plaintiff's home.  Even if the curtains in the bedroom fell for innocent reasons, Plaintiff's own allegations show that immediate action was necessary from the Defendants' perspective to prevent harm to Plaintiff's wife and/or to property.  Under the circumstances at the time, the curtains falling in the bedroom would certainly raise a reasonable suspicion of further domestic disturbance requiring intervention.  To be sure, Defendants' failure to act under such circumstances very well could have allowed harm to Plaintiff's wife.  Plaintiff's claim based on Defendants' unauthorized entry into Plaintiff's home, therefore, fails initial review and will be dismissed.

### B.  Excessive Force

"The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of 'seizures effectuated by excessive force.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (quoting Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006)).  In this regard, the inquiry is whether a reasonable officer would have determined that the degree of force used was justified by the threat presented, an objective inquiry "requir[ing] careful

attention to the facts and circumstances in each particular case," including "'the severity of the crime at issue,' whether the 'suspect poses an immediate threat to the safety of the officers or other,' and whether the suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Here, taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff's claims against Defendants Burns and Capps survive initial review as to the force used in arresting Plaintiff, as these claims are not clearly frivolous.

## C. False Imprisonment

Plaintiff complains that he was falsely arrested and imprisoned and that he is currently a pretrial detainee. In Younger v. Harris, the Supreme Court held that a federal court should not interfere with state criminal proceedings except in the most narrow and extraordinary of circumstances. 401 U.S. 37, 43-44 (1971). Under the Younger abstention doctrine, abstention is proper in federal court when (1) there is an ongoing state court proceeding; (2) the proceeding implicates important state interests; and (3) the plaintiff has an adequate opportunity to present the federal claims in the state proceeding. Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995).

Here, given that Plaintiff remains detained at the HCDC and, therefore, that the state court proceeding is ongoing, the Court must abstain from interfering in the ongoing state proceedings. The Court will, therefore, dismiss without prejudice Plaintiff's claim based on his alleged false imprisonment. Should the state criminal proceeding terminate in Plaintiff's favor, Plaintiff may revisit this claim against Defendant Burns.

### D.    Official Capacity

To the extent Plaintiff seeks to sue Defendants in their official capacities, these claims fail. Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal

quotation marks and citations omitted).  Plaintiff here does not allege that any official policy was the moving force behind or otherwise played a part in any constitutional violation.  Plaintiff, therefore, has also failed to state a claim against Defendants in their official capacities and any such claims will be dismissed.

## IV.    LETTER AND MOTION FOR PRELIMINARY INJUNCTION

Also before the Court are a letter Plaintiff directed to the Clerk and Plaintiff's "Proposed Order of Preliminary Injunction," which the Court will construe as a motion for preliminary injunction.  [Docs. 7, 7-1, 7-2].  In his letter, Plaintiff requests the Clerk to act on Plaintiff's prisoner trust fund account statement and for copies of the docket sheet and for a "stamped filed copy of [his] motion."  [Doc. 7].  Plaintiff is advised that this letter is improper and will not be considered by the Court other than to direct the Clerk to mail Plaintiff a copy of the docket sheet in this matter.  As Plaintiff was expressly directed in the Order of Instructions mailed to him on April 12, 2022, "[l]etters sent to the Clerk of Court or Judge will not be answered." [Doc. 3 at ¶ 5].  Should the Plaintiff seek relief from the Court, he must file a proper motion with the Court.  [Id. ("Only motions will be ruled on by the Court.")].  Should Plaintiff file documents in this case directed to the Clerk or

to the undersigned in the future, they may be summarily dismissed and/or stricken.

Moreover, a litigant is ordinarily required to pay his own litigation expenses, even if he is indigent.  See United States v. MacCollom, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress…."). Plaintiff may pay for the copies he seeks at the standard rate of $.50 per page.  See https://www.ncwd.uscourts.gov/court-fees. The Court, however, will instruct the Clerk mail Plaintiff a copy of the docket sheet.

Plaintiff also moves the Court for injunctive relief.  [Docs. 7-1, 7-2].  In this motion, Plaintiff complains that he is only allowed to receive his "mail-record" once per month according to a "new rule" at the HCDC and that the HCDC is required to mail all of Plaintiff's legal mail at the State's expense. [Doc. 7-1 at 2]. Plaintiff claims that he should be allowed to access his mail-record "on request" to ensure that his legal mail "is mailed as it should be." [Id.].  Plaintiff also contends that, while he is provided three (3) free "indigent stamps" per week, the State is required to mail his legal mail at its expense. [Id. at 3].  Plaintiff states that he has multiple actions with different courts and that his lack of access to unlimited free stamps may cause him to miss a deadline.  [See id.].

Preliminary injunctive relief is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009).

Plaintiff's motion for preliminary injunctive relief fails. The relief Plaintiff requests does not relate to the instant lawsuit. Plaintiff's suit arises out of Defendants' alleged use of excessive force incident to Plaintiff's arrest. Here, Plaintiff seeks injunctive relief against unnamed, unidentified individuals who are not parties to the instant suit and related to circumstances wholly distinct from that at issue in the instant lawsuit. It is not within the Court's purview to order the relief sought by Plaintiff under

these circumstances. Moreover, even if Plaintiff's motion were properly brought in this action, Plaintiff has not shown that he is entitled to the requested relief in any event. See Real Truth About Obama, 575 F.3d at 346. The Court will, therefore, deny Plaintiff's request for injunctive relief.

## V.    CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915A as to Plaintiff's Fourth Amendment excessive force claim against Defendants in their individual capacities. Plaintiff's remaining claims will be dismissed in accordance with the terms of this Order[3] and Plaintiff's motion for preliminary injunction will be denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's Fourth Amendment excessive force claim against Defendants in their individual capacities, which passes initial review.

**IT IS FURTHER ORDERED** that Clerk is directed to mail two (2) blank summons forms to Plaintiff for Plaintiff to fill out and identify Defendants Burns and Capps in the summonses for service of process, and then return

---

[3] The Court notes that Plaintiff's allegations did not implicate the Eighth Amendment, as claimed by Plaintiff, and that any putative claims thereunder are also dismissed for Plaintiff's failure to state a claim for relief.

the summonses to the Court.  Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service.  Once the Court receives the summonses from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendants.

**IT IS FURTHER ORDERED** that Plaintiff's motion for preliminary injunction [Doc. 7-1] is **DENIED**.

The Clerk is respectfully instructed to separately docket the documents at Docket No. 7-1 as Plaintiff's Motion for Preliminary Injunction with the documents at Docket No. 7-2 as exhibits thereto and indicate the Motion's denial consistent with the terms of this Order.

The Clerk is also respectfully instructed to mail Plaintiff a copy of the docket sheet in this matter.

**IT IS SO ORDERED**.

Signed: May 27, 2022

Martin Reidinger
Chief United States District Judge