UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00078-MR

RICARDO EDWIN LANIER,        )
                             )
            Plaintiff,       )
                             )
vs.                          )     ORDER
                             )
                             )
JUSTIN BURNS, et al.,        )
                             )
            Defendants.      )
_____)

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, [Doc. 61], and Defendants' Motion to Strike Plaintiff's Sur-Reply, [Doc. 67].

**I.    PROCEDURAL BACKGROUND**

Pro se Plaintiff Ricardo Edwin Lanier ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Defendants J. Burns and Z. Capps,[1] Henderson County Sheriff Officers, while he was a pretrial detainee at the Henderson County Detention Center (the "Jail") in Hendersonville, North Carolina. [Doc. 1, see Doc. 1-7]. Plaintiff's verified Complaint survived initial

---

[1] The true, full names of these Defendants are Justin Burns and Zane Capps. [See Docs. 61, 62-2]. The Court will direct the Clerk to update the docket accordingly.

review on his Fourth Amendment excessive force claim against these Defendants. [Doc. 12 at 7-8, 13]. Plaintiff's remaining claims, including his Fourth Amendment claim based on Defendants' alleged unauthorized entry into Plaintiff's home, were dismissed for Plaintiff's failure to state a claim for relief.[2,3] [Id. at 5-7, 13].

Defendants moved for summary judgment. [Doc. 61]. In support of their motion, Defendants submitted a memorandum, the Affidavits of Defendant Capps and defense counsel,[4] and excerpts from Plaintiff's deposition in this matter. [Docs. 62, 61-1 to 61-4]. Defendants argue they are entitled to summary judgment because the force used in arresting Plaintiff was objectively reasonable and because they are entitled to qualified immunity in any event. [Doc. 62 at 4-17].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements

---

[2] Plaintiff alleged in his Complaint and claimed in his "Proof of Service of Enclosed Documents" that video footage from police body cameras was included with his Complaint as "EXHIBIT B." [See Doc. 1 at 3, 7-12; Doc. 1-5]. No such Exhibit B was filed with the Court and Plaintiff was advised of such. [4/12/2022 (Court Only) Docket Entry; Doc. 12 at n.2]. To date, no video footage of the incident has been submitted to the Court by either party and it is not a part of the forecast of evidence before the Court now.

[3] Plaintiff sought reconsideration of the Court's initial review Order to the extent it dismissed Plaintiff's claims, which the Court denied. [Docs. 13, 15]. Plaintiff appealed the Court's denial of his motion to reconsider [Doc. 30], and the Fourth Circuit dismissed Plaintiff's appeal for lack of jurisdiction [Doc. 70].

[4] Defendant Burns did not submit an Affidavit in support of the summary judgment motion.

2

for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 63]. Plaintiff timely responded to Defendants' summary judgment motion. [Docs. 64]. He submitted a two-page unsigned "Opposition," his sworn deposition testimony, and an unsworn statement purportedly by Plaintiff's wife, Lakesha Bunch.[5] [Docs. 64, 64-1 to 64-2]. Defendants replied [Doc. 65] and Plaintiff filed an unauthorized surreply [Doc. 66], which Defendants moved to strike [Doc. 67]. The Court will grant Defendants' motion and strike Plaintiff's surreply.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[5] This statement appears to have been written and signed by the Plaintiff, not Ms. Bunch. [See Doc. 64-2]. Even assuming it was prepared and signed by Ms. Bunch, it was not signed under penalty of perjury and has no evidentiary value here.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. <u>Wai Man Tom v. Hospitality Ventures LLC</u>, 980 F.3d 1027, 1037 (4th Cir. 2020); <u>see</u> <u>Anderson</u>, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.[6]

---

[6] Also included in this forecast is a verified statement prepared by Plaintiff that he attached as an Exhibit to his Complaint ("Verified Statement"). [<u>See</u> Doc. 1-4]. The Court notes that there are material discrepancies in and between the Verified Statement and Plaintiff's Complaint and summary judgment evidence, which the Court will note as relevant. Also, in his deposition, Plaintiff insisted that "[t]he court has [the video evidence]." [Doc. 64-1 at 11]. As noted, [n.2 <u>supra</u>], however, this evidence is not before the Court now – and has never been – and no dispute over this evidence was brought before the Court.

On July 9, 2021, at approximately 12:45 a.m., Defendants Capps and Burns, along with a third officer, responded to Plaintiff's residence for a domestic disturbance call made by Lakesha Bunch, Plaintiff's wife. [Doc. 62-2 at ¶ 2: Capps Dec.; Doc. 64-1 at 3]. Defendants had previously responded to domestic disturbance calls at Plaintiff's residence and Defendant Capps had previously arrested Plaintiff for violating a domestic violence protective order. [Id. at ¶ 3; Doc. 64-1 at 6]. After Defendants and the other officer arrived, Defendants remained inside and spoke with Ms. Bunch, while the third officer spoke with Plaintiff, who was wearing boxer shorts, outside. [Doc. 64-1 at 3, 7]. During the exchange outside, Bunch assured Defendants that Plaintiff had not assaulted her. [Id. at 4]. Rather, Bunch called the police to mediate an argument over a credit card. [Id. at 3-4]. Plaintiff and Bunch refused to leave the home and Plaintiff assured Defendants that he would not bother Bunch and they would stay separated inside the house. [Doc. 62-2 at ¶ 5]. The entire interaction lasted approximately 13 minutes. [Doc. 64-1 at 4]. Defendants and presumably the third officer left the home and returned to their patrol cars. [Doc. 62-2 at ¶ 5]. As Defendants were leaving and the door closing, Plaintiff asked Bunch why she called the police. Plaintiff and Bunch went to the back of the bedroom and "were arguing going back and forth, back and forth." [Doc. 64-1 at 4-5]. As Defendants were

6

leaving, they observed Bunch tearing down the curtains on the windows.[7] [Doc. 62-2 at ¶ 6]. Defendants' forecast of evidence shows that, after Bunch pulled the curtains down, Defendants observed Plaintiff grab Bunch by the neck and the back of the right shoulder with his left hand. [Id. at ¶ 6]. Plaintiff's forecast of evidence, on the other hand, shows that he was on the other side of the bedroom from Bunch and did not assault her. [Doc. 64-1 at 5]. In either case, after witnessing the curtains come down, Defendants reentered Plaintiff's home and went to the bedroom.[8] [Doc. 62-2 at ¶¶ 6-7]. Defendant Burns ordered Plaintiff to put his arms behind his back and Plaintiff complied.[9] [Doc. 64-1 at 20, 18]. Defendant Capps, who was

---

[7] In his deposition testimony, Plaintiff testified that, while he and Bunch were arguing in the bedroom, "somehow the curtains came down. She didn't pull the curtains down or anything…. I guess she was messing her clothes or something." [Doc. 64-1 at 5]. In his Complaint, Plaintiff alleged that "as they were in the bedroom [he] asked his wife why did she call the police, which infuriated her, and she got upset and while standing by the curtains accidentally made the curtains come down." [Doc. 1 at 8]. Finally, in his Verified Statement, Plaintiff attested that, once he and Bunch were in the bedroom, he "asked his wife why did she call the Police, which infuriated her, and she got upset and began pulling curtains down in the bedroom…." [Doc. 1-4 at 7]. While it is well-established that a party may not defeat summary judgment by propounding later sworn testimony that conflicts with previous averments, In re Family Dollar FLSA Litig., 637 F.3d 508, 512 (4th Cir. 2011) (quotation and citation omitted), the allegations in Plaintiff's Complaint conflict with his contemporaneously submitted Verified Statement but accord with his deposition testimony.

[8] It is not clear from the forecast of evidence whether the third officer reentered the house. [See Doc. 64-1 at 13].

[9] The parties disagree regarding which Defendant drew his taser and which Defendant handcuffed the Plaintiff. Plaintiff contends that Defendant Capps drew his taser and that Defendant Burns handcuffed the Plaintiff. [Doc. 64-1 at 5-6, 18, 20]. Defendants' forecast of evidence shows that Defendant Burns drew his taser and that Defendant Capps

7

Case 1:22-cv-00078-MR   Document 72   Filed 08/29/23   Page 7 of 18

approximately five feet from Plaintiff, drew his taser and Defendant Burns proceeded to handcuff Plaintiff. [Id. at 5, 13]. First, Defendant Burns cuffed Plaintiff's right wrist "extremely tight," but "this didn't bother [Plaintiff] because [he's] used to them officers doing that." [Id. at 5]. Next, Defendant Burns proceeded to cuff Plaintiff's left wrist. The left cuff had some sort of "rough, rugged edge or something" that, when Burns "closed it real hard," dug into Plaintiff's skin, causing Plaintiff to jump and turn toward Defendant Capps.[10] [Id. at 5-6]. Defendant Capps then tased the Plaintiff in the chest, causing Plaintiff to suffer "excruciating, degenerating pain" for seven to ten seconds. [Id. at 6, 9; see Doc. 62-2 at ¶ 10]. Plaintiff fell to the ground and was given verbal commands to roll onto his stomach with his hands behind his back. He followed commands and Defendants placed him under arrest. [Doc. 62-2 at ¶ 11]. As Plaintiff was walking out the door, he was told he was being

---

handcuffed the Plaintiff. [Doc. 62-2 at ¶¶ 8-9]. For the purposes of summary judgment, the Court adopts Plaintiff's version as being more favorable to the Plaintiff. See Scott, 550 U.S. at 380.

[10] In his deposition, Plaintiff testified that, at this point, "I *did* come at him with my hands up or anything…." [Doc. 64-1 at 6 (emphasis added)]. Given the remaining forecast of evidence before the Court showing that Plaintiff was fully handcuffed with his hands behind his back at this point, it appears that Plaintiff may have either misspoken during his deposition and intended to say, "I *didn't* come at him with my hands up or anything," or that a transcription error occurred. On this point, the Court notes that Plaintiff opted to review and was allowed to make corrections to the deposition transcript, and he did not correct this testimony. [See Doc. 64-1 at 24]. For purposes of summary judgment here, the Court must construe this ambiguity in Plaintiff's favor and assume that Plaintiff did not come at Defendant Capps with his hands up.

arrested for assaulting his wife. [Doc. 64-1 at 7].

Defendants escorted Plaintiff to Defendant Burns' patrol car and Plaintiff was placed inside. [Doc. 62-2 at ¶ 12]. Defendant Burns called Henderson County dispatch to have EMS come to the scene and remove the taser probes. Once EMS arrived, Defendant Capps opened the patrol car door for EMS to examine the Plaintiff. While the door was open, Plaintiff threatened Defendant Burns that he, Plaintiff, was going to kill Burns and his family. [Id.]. After EMS removed the probes, Plaintiff was transported to the Jail. He appeared before a magistrate and was charged with assault on a female, communicating threats, and resisting an officer. [Id. at ¶ 15]. These charges were ultimately dismissed. [Doc. 64-1 at 14].

## IV. DISCUSSION

### A. Excessive Force

Excessive force claims in the context of an arrest are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 394 (1989). Reasonableness must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments---in circumstances that are

tense, uncertain, and rapidly evolving---about the amount of force that is necessary in a particular situation." Id. at 396-97. "The question is 'whether the totality of the circumstances justifies a particular sort of seizure.'" Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

In evaluating objective reasonableness, the Supreme Court instructs courts to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. When a taser is deployed during a seizure, the Graham factors apply. Estate of Armstrong v. Village of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2016).

Tasing suspects when they do not pose a threat to an officer's safety and are not actively resisting arrest is objectively unreasonable and constitutes excessive force. Meyers v. Baltimore County, Md., 713 F.3d 723, 735 (4th Cir. 2013). See also Cyrus v. Town of Mukwonago, 624 F.3d 856, 863 (7th Cir. 2010) (taser use when misdemeanant was not violent and did not try to flee but resisted being handcuffed constitutes excessive force). "[A] police officer may *only* use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force."

Armstrong, 810 F.3d at 905. Moreover, "'physical resistance' is not synonymous with 'risk of immediate danger.'" Id. As such, the Defendants' use of force here is only proportional in light of all the circumstance "if [Plaintiff's] resistance raised a risk of immediate danger that outweighs the Graham factors militating against harming [Plaintiff]." Id. (citations omitted).

The relevant forecast of evidence shows that there were at least two officers in Plaintiff's bedroom responding to the curtains in the bedroom coming down. The relevant forecast of evidence further shows that Defendant Burns had secured Plaintiff's left wrist in a handcuff behind his back and, immediately on Burns' closing the handcuff around Plaintiff's right wrist, Plaintiff jumped and turned toward Defendant Capps, with his hands secured behind his back. The forecast of evidence further shows that Plaintiff was wearing boxer shorts and had been following commands. Moreover, there is no forecast of evidence that he was armed or that Defendants reasonably believed he was armed. Nor does the forecast of evidence show that Plaintiff was actively resisting. Under this forecast of evidence, an objectively reasonable officer under the circumstances would not have perceived Plaintiff's movement while being handcuffed as creating a "risk of immediate danger" to the Defendants. Moreover, the forecast of evidence does not show that Plaintiff was warned that the taser would be

11

deployed if he did not correct the perceived noncompliance.  As such, construing the forecast of evidence in the light most favorable to the Plaintiff, none of the Graham factors support the use of force against Plaintiff.  The use of force was, therefore, objectively unreasonable.

### B. Qualified Immunity

Defendants argue that, even if the forecast of evidence shows that Defendants violated Plaintiff's constitutional rights, they are entitled to qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

"To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).  Even

12

Case 1:22-cv-00078-MR   Document 72   Filed 08/29/23   Page 12 of 18

where an officer commits a constitutional violation, that officer is still entitled to qualified immunity if, in light of clearly established law, the officer could reasonably believe his actions were lawful. Henry, 652 F.3d at 531.

Here, having concluded that the relevant forecast of evidence shows that Defendants' "conduct violated a constitutional right," the Court examines whether that right was "clearly established" at the time of Defendants' actions. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). The law is "clearly established" for qualified immunity purposes by decisions of the U.S. Supreme Court, Fourth Circuit Court of Appeals, or the highest court of the state where the case arose. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc). This inquiry is limited to the law at the time of the incident, as "an official could not reasonably be expected to anticipate subsequent legal developments." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). "Precedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." Kisela v. Hughes, 138 S.Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks and citation omitted). For Defendants to be entitled to qualified immunity, they must not have been on notice that their conduct violated established law. Hope v. Pelzer, 536 U.S. 730, 741, 122

13

S.Ct. 2508 (2002). This does not mean "the very action in question [had] previously [been] held unlawful." Estate of Armstrong, 810 F.3d at 910. Rather, the unlawfulness of the action must have been apparent "in light of pre-existing law." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).

The incident here occurred in July 2021. The Court, therefore, will examine pre-existing law to determine whether Defendants were on notice that their actions violated established law. In 2013, the Fourth Circuit concluded that the continued use of a taser in arresting an armed, agitated arrestee who was advancing toward the defendant officers became objectively unreasonable once the arrestee dropped his bat, was physically restrained, and abandoned his resistance. Meyers, 713 F.3d at 733-34. The Court denied qualified immunity, reasoning that "[t]he use of any 'unnecessary, gratuitous, and disproportionate force,' whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured." Id. at 735 (quoting Park v. Shiflett, 250 F.3d 843, 852-53 (4th Cir. 2001)).

In 2016, in Estate of Armstrong, the Fourth Circuit awarded the officer defendants qualified immunity in their unconstitutional use of an electric stun gun in seizing a mentally ill man pursuant to an involuntary commitment

order. The man had wrapped himself around a stop sign, refusing to let go. The Court reached this conclusion because the constitutional violation, which the Court characterized as an individual's "right not to be subjected to tasing while offering stationary and non-violent resistance to a lawful seizure, occurred in 2011, when not "every reasonable official would have understood that" tasing Armstrong was unconstitutional. Id. at 908 (citation omitted). In so holding, the Fourth Circuit noted that that, "substantial case law indicated that [the officers] were treading close to the constitutional line." That is, the Court "h[ad] previously held that tasing suspects after they have been secured, and that punching or pepper spraying suspects in response to minimal, non-violent resistance constitute excessive force." Id. at 908 (internal citations omitted).

A few months later, in Yates v. Terry, 817 F.3d 877 (4th Cir. 2016), regarding a defendant officer's use of a taser to effect the arrest of an unarmed, unrestrained traffic misdemeanant who moved his head toward the officer while his hands were on his car, the Fourth Circuit affirmed the denial of qualified immunity to the officer. The Court concluded that, "it was clearly established in 2008 that a police officer was not entitled to use unnecessary, gratuitous, or disproportionate force by repeatedly tasing a nonviolent misdemeanant who presented no threat to the safety of the officer or the

15

public and who was compliant and not actively resisting arrest or fleeing." Id. at 887 (citations omitted). In Yates, the Court also noted that, in 2003, it had denied qualified immunity to officers who had used excessive force against individuals who had not committed any crimes, were secured in handcuffs, and posed no threats to the officers or others. Id. (citing Bailey v. Kennedy, 349 F.3d 731, 745 (4th Cir. 2003), and Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003)).

Construing the forecast of evidence, including the identified ambiguity in Plaintiff's deposition testimony [n.10 supra], in the light most favorable to the Plaintiff, as the Court must do here, the Court cannot conclude as a matter of law that Defendants are entitled to qualified immunity. That is, in July 2021, in light of pre-existing law, it was clearly established that an unarmed, restrained individual and was complying with commands and offering no violent resistance, had the right to be free from the use of excessive force. The Court, therefore, is constrained to find that Defendants are not entitled to qualified immunity and will deny Defendants' motion for summary judgment. The Court notes, however, that if the jury at trial finds that Plaintiff was not fully restrained and turned toward and "came at [a Defendant] with [his] hands up," Defendants would be entitled to qualified immunity. See Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005)

16

(holding that where "a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury").

## V. CONCLUSION

In sum, for the reasons stated herein, the Court denies Defendants' Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 61] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike [Doc. 67] is **GRANTED** and Plaintiff's Surreply [Doc. 66] is hereby **STRICKEN** from the record in this matter.

The Clerk is respectfully instructed to update the docket in this matter to reflect the true, full names of Defendant J. Burns as Justin Burns and of Defendant Z. Capps as Zane Capps.

17

Case 1:22-cv-00078-MR   Document 72   Filed 08/29/23   Page 17 of 18

**IT IS SO ORDERED**.

Signed: August 28, 2023

Martin Reidinger
Chief United States District Judge