UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00078-MR

| | |
|---|---|
| RICARDO EDWIN LANIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ) | |
| JUSTIN BURNS, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on its own motion under Rule 60(a) of the Federal Rules of Civil Procedure on its review of the docket in this matter.

On August 28, 2023, the Court denied Defendants' Motion for Summary Judgment [Doc. 72] and the Court herein incorporates that Order by reference. In short, Plaintiff sued Defendants Justin Burns and Zane Capps, Henderson County Sheriff Officers, for using a taser on Plaintiff incident to his arrest for assaulting his wife. [See Doc. 1]. When Plaintiff originally filed this action, he claimed in his Complaint and in his "Proof of Service of Enclosed Documents" that he submitted video footage of the incident that was captured by officer body cameras as Exhibit B to his Complaint. [See Doc. 1 at 3, 7-13; Doc. 1-5]. In docketing the Complaint,

1

however, the Clerk noted that "EXHIBIT B: DISC #1 From Police Body Camera, and DISC #2 From Police Body Camera [were] not included in this mailing," contrary to Plaintiff's Proof of Service. [4/12/2022 (Court Only) Docket Entry]. Since filing his Complaint, Plaintiff has filed numerous superfluous and unsupported letters, motions, and other documents in this case, [see Docs. 7, 11, 13, 14, 16, 17, 19, 21, 22, 23, 25, 33, 37, 39, 42, 53, 57, 66, 69], several of which were stricken from the record in this matter, [see Docs. 25, 26, 53, 54, 66, 72]. Among those filings was a "Declaration" in which Plaintiff described what he contends the body camera video footage shows.[1] [Doc. 33].

On summary judgment, Plaintiff's forecast of evidence included a two-page unsigned "Opposition" and his sworn deposition testimony. [Docs. 64, 64-1]. During his deposition, Plaintiff testified that the Court had the video footage of the incident. [Doc. 64-1 at 3-4]. When the Court denied Defendants' summary judgment motion, however, it was under the mistaken belief that Plaintiff never actually submitted the video footage to the Court

---

[1] This purported Declaration was not part of the forecast of evidence at summary judgment because it was not made under oath or under penalty of perjury. [See Doc. 33]. A few days after the Declaration was docketed by Clerk's staff, the Clerk's office noted in the docket that "CDs (labeled Disc #1 and Disc #2) containing exhibits" were stored in the Clerk's Office safe. [10/17/2022 (Court Only) Docket Entry]. Apparently, over six months after filing his Complaint, Plaintiff had mailed the CDs containing the video footage to the Court with this "Declaration." [See Doc. 33-1].

because Plaintiff falsely represented in his Complaint and its "Proof of Service" to having filed the video footage therewith and Plaintiff did not submit the video footage with his summary judgment materials.

Relying on the forecast of evidence before it, which did not include the video footage, the Court determined that a reasonable jury could find that the use of force by Defendants violated Plaintiff's Fourth Amendment rights because it was objectively unreasonable. [Doc. 72 at 12]. This holding was dependent on a forecast of evidence in Plaintiff's deposition that Defendant Burns had cuffed Plaintiff's right wrist behind Plaintiff's back without incident and that, immediately on closing the handcuff around Plaintiff's left wrist, Plaintiff jumped and turned toward Defendant Capps, but did <u>not</u> "come at him with his hands up." [Id. at 8, n. 10]. That forecast of evidence showed that the left cuff had some sort of "rough, rugged edge or something" that dug into Plaintiff's skin when Defendant Burns "closed it real hard," which caused Plaintiff to jump. [Id. at 8]. Finally, the forecast of evidence before the Court showed that Defendant Capps tased Plaintiff in response to this movement. [Id.]. The Court held that Defendants were not entitled to qualified immunity because, "in July 2021, in light of pre-existing law, it was clearly established that an unarmed, restrained individual [who] was complying with commands and offering no violent resistance, had the right

3

Case 1:22-cv-00078-MR   Document 76   Filed 09/29/23   Page 3 of 6

to be free from the use of excessive force." [Id. at 16]. The Court noted, however, that "if the jury at trial finds that Plaintiff was not fully restrained and turned toward and 'came at [a Defendant] with [his] hands up,'" Defendants would be entitled to qualified immunity." [Id. (citation omitted)].

On September 14, 2023, when the Plaintiff notified the Court of his new address, Plaintiff also directed the Court's attention to the October 17, 2022 Docket Entry reflecting that the Clerk's office had stored the CDs in the Clerk's Office safe. [Doc. 75]. The Court has now obtained and reviewed the video footage of the incident. The footage shows, in significant part, as follows. Defendant Capps, who was wearing the body camera, walked through the house to the back bedroom where Plaintiff can be heard repeatedly yelling, "I'm not touching her." Defendant Burns was already standing outside Plaintiff's bedroom door at the back of the house[2] and Plaintiff was standing in the doorway. Defendant Burns repeatedly ordered Plaintiff to put his hands behind his back while Plaintiff continued to yell, denying having assaulted his wife. Plaintiff put his hands behind his back and turned with his back to Defendant Burns. Defendant Capps was to Plaintiff's left. When Defendant Burns attempted to apply a handcuff to Plaintiff's right wrist, Plaintiff quickly jerked his arms up and away from

---

[2] The video footage did not show any other officers in the home.

Defendant Burn's grasp and yelled, "Hey look, check this out!" as he turned toward the Defendants. Defendant Capps quickly deployed the taser to Plaintiff's lower left side and Plaintiff fell to the ground, where it became apparent that neither of Plaintiff's wrists had been successfully handcuffed. This video evidence conclusively refutes Plaintiff's deposition testimony on which the Court had relied to conclude that a jury could find in Plaintiff's favor.

In light of this evidence that was not previously considered by the Court because of the Court's oversight or omission, the Court will correct its summary judgment order under Rule 60(a) of the Federal Rules of Evidence. Fed. R. Civ. P. 60(a) ("The court may correct … a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."). The complete forecast of evidence shows that Defendants are entitled to qualified immunity because Plaintiff was unrestrained, quickly jerked his arms up and away from the grasp of Defendant Burns while Defendant Burns was attempting to handcuff him, turned toward the Defendants, and was actively yelling, claiming he had not assaulted his wife.[3] While Plaintiff's story that the handcuff had a jagged edge that hurt his wrist may be true, the Defendants are nonetheless entitled

---

[3] While the video footage also weighs against a finding that Defendants' actions were objectively unreasonable, the Court will not revisit that determination here because Defendants are nonetheless entitled to qualified immunity.

to qualified immunity on the complete forecast of evidence now before the Court. The Court, therefore, will amend its summary judgment Order under Rule 60(a) and grant summary judgment for Defendants.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that the Court's Order [Doc. 72] is hereby **AMENDED** in that Defendants' Motion for Summary Judgment [Doc. 61] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to terminate this action.

**IT IS SO ORDERED**.

Signed: September 29, 2023

Martin Reidinger
Chief United States District Judge

6

Case 1:22-cv-00078-MR   Document 76   Filed 09/29/23   Page 6 of 6